[No. 6,874.—Department No. 2.]

## PEOPLE *v.* REDINGER.

APPEARANCE — CRIMINAL LAW — ESCAPE — APPEAL — CONSTITUTIONAL LAW.— Under the provisions of the Constitution, and of the Penal Code, a person charged with crime can appear and defend only when in actual or constructive custody, and has no longer a right to appear by counsel, when he has escaped from custody and is at large. Accordingly, where a defendant, convicted of murder, appealed, and afterward escaped from jail, it was ordered that the appeal should stand dismissed, unless the defendant should return to custody within a time specified.

Motion to dismiss an appeal from a judgment of conviction, and from an order denying a new trial.

*Attorney-General,* for Respondent.

*John C. Deuel,* for Appellant.

It is not necessary to have the defendant before the Court in order to hear and determine the case on appeal. In the English Courts, at common law, the presence of a person indicted for a felony was required in the Appellate Court, in every stage of the proceedings. It was necessary for him to follow the record. But in the United States the personal appearance is not necessary to give jurisdiction. (Archbold's Crim. Prac. and Pleading, Waterman's notes, p. 724 of vol. 1.)

It may be admitted, for argument, that the appellant in this case is guilty of contempt, in not remaining in jail during the pendency of this appeal. But does it follow that his appeal shall be dismissed, and the death penalty inflicted in case he is captured, whether he was rightfully convicted or otherwise?

Is it not better, and more in harmony with our laws and the spirit of justice, to set aside the order for the hearing of the appeal in this case, and in all similar cases, and continue it indefinitely, or until it shall be affirmatively shown that the appellant has been recaptured, and is in the custody of the law? But if the appeal in this case be dismissed, and the defendant, or escaped person is recaptured, the Superior Court of Colusa County would order his execution, although his conviction may have been erroneous. Breaking jail is not by law punishable with death, yet, if the man is innocent, or was convicted of a crime against the evidence, his jail-breaking would be the cause of his suffering death in case of capture.

THORNTON, J.:

The defendant was indicted for the murder of one James King, was tried in the District Court of Colusa County, under this indictment, and on the 16th of December, 1879, convicted of murder in the first degree. The defendant moved for a new trial, which was denied. The Court, in due course, pronounced sentence of death by hanging. The defendant prosecuted an appeal to this Court, notice of the same having been served on the 9th of February, 1880, and the cause was here for argument at the session of May, 1880, held at the city of Sacramento.

When the cause was called for argument, the Attorney-General, (Hon. A. L. Hart) moved the Court for an order dismissing the appeal, on the ground that since the appeal was taken the defendant had escaped from jail, and was no longer in custody, to abide the sentence of the Court. This fact is certified to the Court by the affidavit of John M. Steele, the Sheriff of the county aforesaid, in whose custody the prisoner had been since the conviction and sentence above mentioned, who deposes under oath that the defendant, by stratagem and force, on the 5th day of April last, escaped from the jail aforesaid, and was then at large. The affidavit bears date the 19th day of May, 1880. Of the escape there is no denial.

The question is one of interest and importance, and is new in this State—no case decided by any of its courts having been produced to us. Several cases were called to our attention, on

the argument of this motion, and a reply has been made to the argument by John C. Deuel, Esq., on behalf of defendant, who, we are informed, was authorized to appear in this Court as defendant's counsel. An objection was taken by the Attorney-General to any one being heard for the defendant, on the ground that this Court ought not to recognize any one as counsel for him, after he had voluntarily withdrawn himself from the jurisdiction of this Court, and the Court in which the conviction was had and sentence pronounced. However, a brief was allowed to be filed on behalf of defendant, which has been since done.

In discussing the motion, several cases were brought to our notice by the Attorney-General. We have examined these cases, and others not cited in the argument.

The earliest decision bearing on the point is in an anonymous case in Maine, (See 31 Me. 592) decided in 1850. It is thus reported: " A defendant had been tried and convicted upon an indictment for an aggravated offense. He excepted, and was committed for want of sureties to appear at the law term, at which the exceptions were to be heard. Meanwhile, he escaped. His counsel proposed to argue the exceptions. But the Court declined to hear the case until the defendant should be again in custody."

*Sherman* v. *Commonwealth* was decided by the Virginia Court of Appeals in 1858. (See 14 Gratt. 677.) In this case Sherman was convicted of a felony, and was sentenced to six years imprisonment in the penitentiary. He obtained a writ of error from the Court of Appeals, which was directed to operate as a *supersedeas* to the judgment. While it was pending in the Appellate Court, Sherman broke jail and absconded. The Attorney-General moved the Court for a rule upon the prisoner to show cause why the Court should not set aside the *supersedeas*, or postpone the hearing of the cause until the prisoner should return to the proper custody. This order was made, and the motion was afterward argued on behalf of the Commonwealth, and the plaintiff in error. The Court adjudged that so much of the order awarding the writ of error as directed it to operate as a *supersedeas* be discharged, and further ordered that the writ of error be dismissed on the 1st of May next, (1859,) unless it should be made to appear to the Court on or before the

day above named that the plaintiff in error is in the custody of the proper officers of the law. This judgment was afterward approved by the same Court in *Leftwich's Case*, in which defendant had been convicted of a felony. (See 20 Gratt. p. 723, decided in 1870.)

The case cited from Massachusetts (*Commonw.* v. *Andrews*, 97 Mass. 543,) was decided in 1867. Andrews was convicted of receiving stolen property. He alleged exceptions, which were allowed, and was held in jail to prosecute. When the case was called in the Supreme Court, the Attorney-General suggested that the defendant had broken jail, and was at large, and asked that he should be defaulted, and the exceptions overruled without argument.

The Court heard argument on the motion by the counsel for defendant, who stated (as appears from the report) the points in his behalf with force and clearness, and we would infer from what is stated in the report, that the motion was elaborately argued by the counsel who spoke for the defendant. The Court granted the motion. We insert here the brief opinion :

" The defendant, by escaping from jail, where he was held for the purpose of prosecuting these exceptions and abiding the judgment of the Court thereon, has voluntarily withdrawn himself from the jurisdiction of the Court. He is not present in person, nor can he be heard by attorney. A hearing would avail nothing. If a new trial should be ordered, he is not here to answer further; if the exceptions are overruled, a sentence cannot be pronounced and executed upon him. The Attorney-General has a right to ask that he should be present to receive the judgment of the Court. (1 Chit. Crim. Law, 663; *Rex* v. *Caudwell*, 17 Q. B. 503.)

" So far as the defendant has any right to be heard under the Constitution, he must be deemed to have waived it by escaping from custody, and failing to appear and prosecute his exceptions in person, according to the order of the Court under which he was committed. Defendant defaulted. Exceptions overruled."

*The People* v. *Genet*, 59 N. Y. 80, (1874) is also cited. In this case, the defendant had been convicted of a felony, and upon this conviction was committed to custody to await sentence

pending an application for the settlement of a bill of exceptions.
When this bill was presented for settlement, the Court declined
to settle it, on the ground that the defendant had, since the con-
viction, escaped from custody, had absconded, and was then at
large. An application was made to the Supreme Court for a
mandamus to compel the trial court to settle and seal the bill of
exceptions. The Supreme Court denied the application, and
the matter was brought on appeal before the Court of Appeals.
This Court affirmed the order of the Supreme Court.

The Court of Appeals held it essential to any step, on behalf
of a person charged with felony, after indictment found, that he
should be in actual custody by being in jail, or constructively,
by being let to bail. (59 N. Y. 81.)

The Court, per Johnson, J., said: "The whole theory of
criminal proceedings is based upon the idea of the defendant
being in the power and under the control of the Court, in his
person. While the Constitution and the statute provide him
with counsel, and the statute gives the right of appearance by
attorney in civil cases, they are silent in respect to the repre-
sentation of persons charged with felony by means of an attor-
ney; and in regard to those charged with lesser offenses, the
statutes permit them to be tried in their absence from court only
on the appearance of an attorney duly authorized for that pur-
pose. This authority, it has been held, must be special, and
distinctly authorize the proceedings. (*People* v. *Petry*, 2 Hilt.
525; *People* v. *Wilkes*, 5 How. Pr. 105.) Even in the absence
of statutory regulations, this rule has been enforced in the courts
of the United States. (*United States* v. *Mayo*, 1 Curt. 433.)
In criminal cases, there is no equivalent for the technical appear-
ance by attorney of defendant in civil cases, except the being
in actual or constructive custody. When a person charged
with felony has escaped out of custody, no order or judgment,
if any should be made, can be enforced against him, and courts
will not give their time to proceedings which, for their effect-
iveness, must depend upon the consent of the person charged
with crime." The opinion ends with this remark: "We think
they" (referring to the statutes of New York giving to defend-
ant a right to make a bill of exceptions) "do not require the
courts to encourage escapes and facilitate the evasion of the

justice of the State, by extending to escaped convicts the means of reviewing their convictions."

In *Smith* v. *The United States*, 94 U. S. 97, (1876) the plaintiff in error had been convicted of some offense, (the report does not state the offense) and had sued out a writ of error to the United States Supreme Court to have the conviction reversed. Afterward he escaped from custody. The cause was docketed in the Supreme Court, December 29th, 1870. It had been continued at every term up to the time of the decision, for the reason that no one had appeared to represent the plaintiff in error. At the October term, 1876, the Court, on motion, dismissed the writ for want of prosecution, but reinstated it, on motion of counsel for the plaintiff, who moved to have it set down for argument. The Court denied the motion, and ordered that, unless the plaintiff in error submitted himself to the jurisdiction of the Court below, on or before the first day of the next term of the Court, the cause is to be left off the docket after that time.

The Court held in this case that it was within its discretion to refuse to hear a criminal case in error, unless the convicted party suing out the writ is where he can be made to respond to any judgment it might render. It thus declared it, per Waite, C. J.: "In this case, it is admitted that the plaintiff in error has escaped, and is not within the control of the Court below, either actually by being in custody, or constructively by being out on bail. If we affirm the judgment, he is not likely to appear to submit to his sentence. If we reverse it, and order a new trial, he will appear or not, as he may consider most for his interest. Under such circumstances, we are not inclined to hear and decide what may be a moot case." (94 U. S. 97.)

In the *Queen* v. *Caudwell*, 17 Q. B. 503, (November, 1851) the defendant had been convicted of perjury, and sentenced to seven years' transportation. Pigott, for the defendant, was about to move for a new trial. It appeared that the defendant was absent. Lord Campbell, C. J., said: "The defendant must be in Court." Erle, J., concurred, and mentioned a like ruling by Lord Denman in a case where he (Erle) was for the defendant. Lord Campbell added: "This is peculiarly a case where the rule ought to be enforced, because the sentence has

been passed on him, and is evaded by his absence; when he appears, you may renew your motion." He referred to *Rex* v. *De Berenger*, 3 Maule & S. 67.

The motion was not heard, on the ground that the defendant was not forthcoming to meet his sentence. (Campbell, C. J.; Patterson and Earl, JJ., concurring.)

See also the *Queen* v. *Chichester*, 17 Q. B. 503, (November 24th, 1851) where, on motion for judgment against defendant, who had suffered judgment to go by default on an indictment for nuisance, and without *laches* of the prosecution, the defendant having gone out of reach before he could be served with notice to appear for judgment, the Court refused to pass sentence in his absence, although it appeared that the removal of the nuisance, which was to a public navigation, was important, and that the judgment of the Court was wanted to authorize the abating it. The Court held that the remedy was by process of outlawry.

In the case under consideration, has the defendant waived the right to have his case considered and determined? This was held in so many words in the case from Massachusetts, (*Commonw.* v. *Andrews, ut supra*) and the same may be regarded as the rule laid down and acted on in the Virginia cases, (*Sherman's Case* and *Leftwich's Case, ut supra.*) The determination under the facts here presented, not to hear the cases, was considered within the discretion of the Court—the discretion to be exercised to be a judicial discretion within limits defined by law. In *Genet's Case*, 59 N. Y. 80, the right to have a bill of exceptions settled was held not to exist on behalf of an escaped convict. In the case in Maine, (31st id.) the Court refused to hear the argument. And in the case from New York (59th id.) the right to be represented by counsel guaranteed both by the Constitution and statute to defendants in cases of 'felony, is held not to exist when the defendant is not actually or constructively in custody, so that the sentence of the Court can be enforced when pronounced. An exception to that rule is referred to in the opinion, as to offenses less than felony.

The provision of the Constitution in this State, both in the first Constitution and that recently adopted, as regards this right, is "*to appear and defend in person, and with counsel.*"

The former Constitution had appended to this provision " as in civil actions." That is omitted in the instrument of 1879. The language is suggestive, and indicates that the party charged is not allowed to appear and defend *by* counsel, but *with counsel*— the person acting as counsel to be present with the defendant, and not without him. In these words it seems as if the power to appear and defend, at least in a case amounting to felony, does not exist in the counsel at all in the absence of the defendant.

This view seems to be sustained by the statute of this State, and to be derived from a history of the law regarding counsel in criminal cases.

The history of the law as regards capital cases will be found in Blackstone's Commentaries. (See Book 4, 355–6.) This author seems to doubt whether it was not allowed by the ancient law of England, and cites the Mirror, chap. 3, § 1. In a note it is said that the right of counsel to plead for them was first denied to prisoners by a law of Henry I, chap. 47–8, which is construed as an erroneous interpretation of the law. However, this author states it as a settled rule at common law, that no prisoner should be allowed a counsel upon his trial on the general issue in any capital crime, unless some point of law arose which was proper to be debated. This denial was on the ground that the judge was counsel for the prisoner—a right of but little worth when a Jeffries or a Scroggs presided. The privilege was only accorded in the case of state criminals by the statute of 7 William III, chap. 3. (Proffatt Jury Trial, § 205.) This statute applied to all cases of such high treason as worked corruption of the blood, misprision of treason, except treason in counterfeiting the king's coin or seal, and such prisoners were allowed to make their full defense by counsel, not exceeding two, to be named by the prisoner, and appointed by court or judge. The same indulgence was extended by statute 20 George III, chap. 30, to Parliamentary impeachments for high treason, " which,"says Blackstone, " were excepted in the former act." (4 Bl. Com. 356.)

Prisoners under a capital charge, whether for treason or felony, upon issues which did not turn on the question of guilty or not guilty, but on collateral facts, always were entitled to

the full assistance of counsel. (Fost. 42, 232; Chitty's note on page above cited from Bl. Com.)

In misdemeanors the defendant was always allowed counsel as in civil actions. (4 Bl. Com. p. 356.) In all cases of felony, defendants, by statutes 6 and 7 William IV, chap. 114, § 11, are allowed counsel.

It will be observed from the above that Blackstone refers to *prisoners* as being allowed counsel to appear and defend. He nowhere speaks of any such allowance to persons not in custody.

How far is the right secured to persons convicted or charged with public offenses, by the statute law of this State? (See §§ 858, 859, 987, 1093, 1095, 1254 of the Penal Code.)

It is apparent from an examination of the above sections that this right is confined to persons charged with a public offense, only when in custody. In fact, courts have no jurisdiction over persons charged with crime, unless in custody actual or constructive. It would be a farce to proceed in a criminal cause, unless the Court had control over the person charged, so that its judgment might be made effective. It is true that an indictment may be found against one not in custody, but steps are directed to be taken in such case to secure his person. (Pen. Code, §§ 945, 979–984.) And unless an arrest is effected, the cause can proceed no further. The defendant is arraigned in person, and pleads in person, (§ 977 Pen. Code) unless in case of misdemeanor. (Id.) Every plea must be oral. (Pen. Code, § 1017.)

By § 1253 of the Penal Code, it is provided, as to criminal causes, that "the judgment may be affirmed if the appellant fail to appear, but can be reversed only after argument, though the respondent fail to appear"; and by § 1255, that "the defendant need not personally appear in the Appellate Court."

It may be urged that, inasmuch as the defendant need not personally appear in the Appellate Court, (§ 1255 Pen. Code, *ut supra*) he has a right to appear by counsel, whether he is in custody or not. For the reasons here given, sustained by the cases cited, we think the defendant has no longer a right to appear by counsel, when he has escaped from custody, until he has returned into custody. By breaking jail and escaping, he had waived the right to have counsel appear for him. (*Commonw.*

v. *Andrews*, 97·Mass. *ut supra*.)    In fact, his right to constitute counsel and invest him with authority no longer exists while his absence from custody continues.

We think it best in view of all the circumstances to direct that the motion to dismiss at once be denied ; and, although it is unlikely that he will ever surrender himself into custody, it is ordered that the appeal herein stand dismissed, unless the defendant shall, before the first Monday of May, 1881, return to the custody of the proper officers of the law.    (See the orders in *Sherman's Case*, 14 Gratt. 677 ; *Leftwich's Case*, 20 id. 716 ; and *Smith's Case*, 94 U. S. 97.)

MYRICK, J., and SHARPSTEIN, J., concurred.