[Nos. B134480, B155077. Second Dist., Div. Four. Mar. 12, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
HYUN GU KANG, Defendant and Appellant.

## COUNSEL

Martin Nebrida Buchanan and Lynda A. Romero for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Margaret E. Maxwell and Theresa A. Cochrane, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT.**[*]—The court has read and considered the motions filed on November 5, 2002, by the People requesting this court to vacate its April 15, 2002, order recalling the remittitur and reinstating appeal No. B134480 and consolidating it with appeal No. B155077, and, further to dismiss the consolidated appeals in their entirety. The opposition to the motions filed on November 18, 2002, by appellant Hyun Gu Kang has also been read and considered. The motions were submitted following oral argument on January 17, 2003.

### FACTUAL BACKGROUND

On April 2, 2002, counsel for Hyun Gu Kang filed a motion to recall the remittitur and to reinstate his dismissed appeal No. B134480 and to consolidate it with his later filed appeal No. B155077. No opposition was filed. On

[*]Before Vogel (C. S.), P. J., Epstein, J., and Hastings, J.

April 15, 2002, this court issued an order recalling the remittitur and reinstating appeal No. B134480 and consolidating it with appeal No. B155077.

In summary, the factual background is the same for both appeals as there was only one criminal prosecution and conviction of Kang and three codefendants for multiple counts of rape, sodomy, robbery, burglary, and conspiracy. On February 16, 1999, the jury returned a verdict finding all of the defendants guilty. Ten days later, February 26, Kang posted a $2.5 million bond and was released from custody, and sentencing was calendared for April 6, 1999.

On March 10, 1999, the district attorney made an ex parte appearance, requesting the trial court to revoke Kang's bail and to issue a warrant for his arrest. The trial court granted the motion and issued the warrant. On March 31, 1999, Kang's trial lawyer, Madelynn Kopple, filed a motion for new trial. Thereafter, Kang failed to appear for sentencing on April 6, 1999.

On June 21, 1999, the district attorney requested that Kang be sentenced in absentia. Kang's counsel stated that there was legal cause to defer sentencing based on a pending motion for new trial. She also stated that she was not aware of the March 10, 1999 ex parte hearing, did not know of Kang's whereabouts, had no authority to waive his appearance, and objected to the imposition of sentence. The trial judge did not rule on the motion for new trial. The court found there had been due diligence to locate appellant and proceeded to impose sentence, in absentia, of four life sentences with minimum terms of 25 years under the one strike law (Pen. Code, § 667.61), plus a consecutive determinate sentence of 171 years and four months.

On August 9, 1999, Kang's trial counsel (Kopple) filed a notice of appeal (the signature is "Hyun Gu Kang by Madelynn Kopple" and the return address is shown as "Hyun Gu 'Eddie' Kang, In Propria Persona").

After the notice of appeal was filed (No. B134480), Attorney Charles Lindner communicated with this court stating that Kang's father had retained him to represent his son. On November 2, 1999, Lindner wrote a letter informing us that he had been retained to represent Kang and that a clerk of our court told him to obtain a substitution of attorney from Kang's father. Lindner stated that obtaining a substitution was problematic because Kang was a fugitive.

According to Lindner's declaration filed with the subsequent motion to recall the remittitur, an unidentified clerk told him that Kang could not

appeal because he was a fugitive and that "led [him] to believe that Mr. Kang could renew his appeal if and when he was apprehended." On January 10, 2000, because no appellant's brief had been timely filed, the court issued a California Rules of Court, rule 17(a) notice. Lindner did not file a brief because the clerk had informed him a fugitive cannot appeal. On February 25, 2000, the appeal in No. B134480 was dismissed.

Kang was extradited from South Korea in October 2001. On November 5, 2001, Kang and his counsel appeared before the trial court on a motion to vacate the sentence and judgment imposed on June 21, 1999. The basis for the motion was the failure of the trial judge to rule on Kang's motion for new trial prior to imposing sentence in absentia on June 21, 1999.[1] The trial court granted the motion to vacate the previously imposed sentence, denied the motion for new trial, and then sentenced Kang to the same prison term that it had previously imposed on June 21, 1999. A notice of appeal was timely filed on November 20, 2001 (No. B155077).

On April 2, 2002, Kang's present counsel of record filed a motion to recall the remittitur and reinstate appeal No. B134480 and to consolidate it with appeal No. B155077. The motion was supported by the declarations of Lindner, appellant Kang, Jin Kang (appellant's father), and Charles M. Sevilla, a criminal defense lawyer. The asserted grounds for the motion were that Kang purportedly had several meritorious grounds to raise on appeal and that the dismissal of the appeal was due to Lindner's inexcusable and ineffective appellate representation in failing to file an opening appellate brief. No opposition was filed by the Attorney General even though the motion and the supporting declarations were served on the Attorney General at its Los Angeles office on March 15, 2002.[2]

On April 15, 2002, we granted the motion. An order recalling the remittitur and reinstating appeal No. B134480 and consolidating it with appeal No. B155077 issued.

On August 5, 2002, Kang filed his opening brief in the consolidated appeal. On November 5, 2002, the Attorney General filed its motions to vacate the order of April 15, 2002, and to dismiss the consolidated appeals. Kang filed opposition to the motions on November 18, 2002. The motions were orally argued and submitted for determination on January 17, 2003.

---

[1]Penal Code section 1202 provides that if a court "neglects" to rule on a motion for new trial, the defendant is entitled to a new trial.

[2]California Rules of Court, rule 41(c) provides: ". . . Failure of the adverse party to serve and file written opposition to any other motion may be deemed a consent to the granting of such motion."

## DISCUSSION

### I

■ Because Kang's basic contention for the reinstatement of his initial appeal is that Lindner provided ineffective appellate assistance, we dispose of it at the outset. It is without merit. First of all, Lindner was never engaged by Kang. Kang's declaration asserts that while he was a fugitive he never engaged Lindner, nor authorized the filing of any notice of appeal. If Kang did have counsel, it was his trial attorney, Kopple. She filed a notice of appeal for Kang, in propria persona. Further, even if Lindner was engaged by Kang's family, that does not bestow on Lindner status of counsel of record because there is no showing that Kang's father had authority to sign a substitution of counsel for Kang. In fact, Kang's present counsel does not even proffer that contention. In any event, the time to file the opening brief was not suspended during Kang's absence and his appeal was properly dismissed. The resolution of the present motions turns on the application of controlling legal authorities about the interplay between an appellant's fugitive status and his right to appeal and the exercise of this court's discretion in that regard. It is through that lens we now view the pending motions.

### II

Here, Kang became a fugitive while his case remained in the trial court upon his failure to appear for sentencing. He was a fugitive when his trial attorney filed a notice of appeal on his behalf and during the entire time his appeal was pending, and after its dismissal. ■ The core issue is whether Kang is entitled to pursue an appeal anew after he was apprehended and in the custody and control of the state.

*People v. Redinger* (1880) 55 Cal. 290 is the seminal authority in California for the proposition that a convicted fugitive defendant has no right to appeal. In *Redinger*, the appellant was convicted of murder and sentenced to hang. He filed a notice of appeal and the matter was set for argument. The Attorney General moved for dismissal on the ground that the appellant had escaped while his appeal was pending. The motion to dismiss was granted unless the appellant returned to custody within 30 days. (*Id.* at p. 299.) ■ The court, after an exhaustive discussion of the law of other jurisdictions, concluded: "In fact, courts have no jurisdiction over persons charged with crime, unless in custody actual or constructive. It would be a farce to proceed in a criminal cause, unless the Court had control over the person charged, so that its judgment might be made effective. . . . [¶] . . . [¶] It

may be urged that, inasmuch as the defendant need not personally appear in the Appellate Court, [citation] he has a right to appear by counsel, whether he is in custody or not. For the reasons here given, . . . we think the defendant has no longer a right to appear by counsel, when he has escaped from custody, *until he has returned into custody.* By breaking jail and escaping, he had waived the right to have counsel appear for him. [Citation.] In fact, his right to constitute counsel and invest him with authority no longer exists while *his absence from custody continues.*" (*People v. Redinger, supra,* 55 Cal. at pp. 298-299, italics added.) In subsequent cases, the Supreme Court has reaffirmed its holding that a defendant who becomes a fugitive while his appeal is pending is not entitled to appellate relief while he remains at large. (*People v. Elkins* (1898) 122 Cal. 654 [55 P. 599]; *People v. Fuhr* (1926) 198 Cal. 593 [246 P. 1116]; and *People v. Clark* (1926) 198 Cal. 453 [245 P. 1112] (*Clark I*).)

The appellant in *Clark I* was apprehended and returned to the custody and control of the state. He filed a motion in the Supreme Court to vacate its prior order dismissing his appeal when he was a fugitive. (*People v. Clark* (1927) 201 Cal. 474 [259 P. 47] (*Clark II*).) The court recognized that the circumstances of Clark's motion presented a different question than was posed in the prior appeal: may an appellant whose appeal has been dismissed because of his fugitive status have his dismissed appeal reinstated when he is no longer a fugitive?

In *Clark II*, the court observed that, "There is little to be found in the reports as to the power of a court, after the dismissal of an appeal upon this ground, to thereafter set aside the order of dismissal and reinstate the appeal, after the appellant has voluntarily surrendered himself, or has been returned to custody." (*Clark II, supra,* 201 Cal. at p. 477.) Instead of resolving that question, the court assumed for the sake of argument that the court had the power to reinstate the appeal and concluded, "[such power] should only be exercised in those cases where it is plainly made to appear that a denial of its exercise would work a palpable injustice or wrong upon the appellant." (*Id.* at p. 478.) It then observed that the appeal had been perfected, fully briefed, and argued. The court then engaged in a full discussion of what was in the record concluding that the evidence was, "without doubt," sufficient to justify the jury's verdict and the judgment of conviction. It denied Clark's motion in the following terms: "The record on appeal before us presents no sufficient showing that would justify a reversal of the judgment. It would accomplish no useful purpose, and it would avail nothing to the appellant to reinstate his appeal, as a consideration thereof could only result in an affirmance of the judgment. We therefore feel constrained to deny appellant's motion to set aside the order dismissing his appeal, and it is so ordered." (*Id.* at p. 486.)

■ Other than *Clark II*, we are unaware of any other California authority addressing the issue of reinstating a criminal appeal that has been dismissed due to the appellant's fugitive status after the appellant has been returned to the custody and control of the state and again seeks appellate review. The other California reported decisions ordering a criminal appeal dismissed are based on the appellant's continuing fugitive status. (*People v. Kubby* (2002) 97 Cal.App.4th 619 [118 Cal.Rptr.2d 588]; *People v. Buffalo* (1975) 49 Cal.App.3d 838 [123 Cal.Rptr. 308]; *People v. Sitz* (1913) 21 Cal.App. 54 [130 P. 858].)

The United States Supreme Court has addressed the policy of dismissing a criminal appeal where the appellant is a fugitive. It has repeatedly approved such dismissals by federal courts of appeals reviewing judgments of conviction from federal district courts. ■ The court, however, has acknowledged that state appellate court dismissals of appeals by fugitives are not subject to review under federal law; it is solely a matter of state law, not within the ambit of federal jurisdiction. (*Estelle v. Dorrough* (1975) 420 U.S. 534, 536-537 [95 S.Ct. 1173, 1175-1176, 43 L.Ed.2d 377].) Federal authority is, however, instructive and we consider it in determining the resolution of the present motions.

■ In *Ortega-Rodriguez v. United States* (1993) 507 U.S. 234 [113 S.Ct. 1199, 122 L.Ed.2d 581], the defendant was one of three persons arrested, tried, and convicted of drug trafficking. The defendant failed to appear for sentencing and became a fugitive. His codefendants appealed, but no petition for appeal was filed on behalf of the fugitive defendant. While the defendant was at large, his codefendants' appeals were decided on the merits. Later the defendant was apprehended and returned to the trial court where he was found guilty of contempt and a prison sentence was imposed for his failure to appear. The defendant then appealed the underlying conviction. The government moved to dismiss based entirely on the fact that petitioner had become a fugitive after his conviction and before his final sentencing. The motion was granted. The United States Supreme Court vacated the judgment.

The court observed: "It has been settled for well over a century that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal." (*Ortega-Rodriguez v. United States, supra,* 507 U.S. at p. 239 [113 S.Ct. at p. 1203].) The explained rationale for this rule is that there could be no assurance that any judgment the appellate court issued would prove enforceable. The court concluded that it is " 'clearly within our discretion to refuse to hear a criminal case in error, unless the convicted party, suing out the writ, is where he can be made to

respond to any judgment we may render.' " (*Id.* at pp. 239-240 [113 S.Ct. at p. 1203].) In addition, the court reiterated the rationale stated in *Molinaro v. New Jersey* (1970) 396 U.S. 365, 366 [90 S.Ct. 498, 498-499, 24 L.Ed.2d 586]: "No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims." In summary, the stated policies of the federal courts for dismissing the appeals of fugitives turn on two concerns: (1) enforceability due to the inability of the court's decision to be imposed on the absent defendant, and (2) the defendant's flight during the pendency of his appeal is a waiver or abandonment predicated on the defendant's flouting the authority of the court. In other words, a fugitive frustrates the appellate process and insults it at the same time. Other considerations influencing the decision to dismiss or not is that dismissal discourages escape and promotes the efficient operation of the appellate courts, and flight may prejudice the prosecution should a new trial be ordered. (*Katz v. U.S.* (9th Cir. 1990) 920 F.2d 610, 612.)

The *Ortega-Rodriguez* court concluded that the enforceability concern did not exist because the defendant escaped before he was sentenced and he did not become a fugitive when his appeal was pending. The disentitlement theory was inapplicable because it was the authority of the district court that was flouted, not the authority of the appellate court. (*Ortega-Rodriguez v. United States, supra,* 507 U.S. 234.) The court reviewed the various ways the district court could vindicate its honor, and appellate sanctions, it held, were inappropriate. The court, however, observed that the conduct of the fugitive defendant could adversely affect the appellate process, making a meaningful appeal impossible. Those circumstances should be considered on a case-by-case basis involving the exercise of discretion. The holding of *Ortega-Rodriguez* is that appellate sanctions are not automatic and cannot be imposed on a fugitive who escapes before the appellate process commences except in the unusual situation where a meaningful appeal is impossible. Applying these expressed concerns and the factors enumerated by the *Katz* court, we conclude that Kang should have his judgment of conviction reviewed.

Because Kang is now in custody and no longer a fugitive, the decision of the appellate court is enforceable. It may be true that Kang flouted the authority of the trial court when he failed to appear for sentencing and became a fugitive, but disentitlement of Kang to foreclose appellate review is not desirable. If it is essential to vindicate judicial authority, the prosecution may charge Kang with failure to appear pursuant to Penal Code section

1320.5, although the penalty for that crime pales in comparison with the sentence imposed by the trial court. Put in perspective, disentitlement is largely symbolic. Also, any consideration that dismissal discourages escape is speculative at best.

The most critical consideration is whether the absence of the appellant undermined the appellate process. Kang's fugitive status prevented the consolidation of his appeal with the appeal of his codefendants. Chief Justice Rehnquist underscored this consideration in his dissent in *Ortega-Rodriguez*: "As is demonstrated by the instant case, the delay caused by preappeal flight can thwart the administration of justice by forcing a severance, requiring duplication of precious appellate resources, and raising the specter of inconsistent judgments." (*Ortega-Rodriguez v. United States, supra*, 507 U.S. 234, 255 [113 S.Ct. 1199, 1211].) Kang's fugitive status prevented the consolidation of his appeal with his codefendants John J. Park and Yeo Won Yun. (*People v. Park* (July 30, 2002, B132915) [nonpub. opn.].) Another codefendant, Moses Kim, filed two appeals involving sentencing issues only. (*People v. Kim* (Sept. 29, 2000, B134441) [nonpub. opn.] and *People v. Kim* (July 9, 2002, B148708) [nonpub. opn.].) Just a cursory review of the opening brief filed by Kang strongly indicates that his appeal would have been appropriately consolidated with the appeals of Moses and Kim. We cannot say, however, that all of Kang's claims of error are unmeritorious based on our prior review of his codefendants' appeals.

An additional factor is prejudice to the government where it would be impossible to convene a new trial due to the unavailability of witnesses and other evidence. The Attorney General does not claim that Kang could not be prosecuted if a new trial is ordered. We assume that there is a full record preserving the testimony of all critical evidence and doubt that there is any risk that Kang could not be retried if that becomes necessary.

Even though Kang's fugitive status precluded consolidation of his appeal with his codefendants' appeals, which resulted in the loss of an efficient disposition of these related appeals, that is an inadequate basis by itself to disallow appellate review. The only truly analogous authority is *Clark II* where the California Supreme Court essentially reviewed the merits of appellant's claims of error before denying his motion to vacate the prior dismissal of the appeal. The court held vacating the dismissal would "accomplish no useful purpose, and it would avail nothing to the appellant to reinstate his appeal, as a consideration thereof could only result in an affirmance of the judgment." (*Clark II, supra*, 201 Cal. 474, 486.) We agree with *Clark II*'s admonition that if the court has the power to reinstate the appeal "it should only be exercised in those cases where it is plainly made to

appear that a denial of its exercise would work a palpable injustice or wrong upon the appellant." (*Id.* at p. 478.) In this case, granting the Attorney General's motions would effectively result in a dismissal of Kang's appeal. We cannot with confidence conclude that dismissing the appeal would not work a palpable injustice on Kang without a full review of the record with the benefit of briefing and oral argument.

## DISPOSITION

The motion of the People to vacate the order issued by this court on April 15, 2002, recalling the remittitur and reinstating appeal No. B134480 is denied and the People's motion to dismiss appeal No. B155077 is denied without prejudice. The order staying briefing is vacated and the People are ordered to file a respondent's brief within 60 days of this order.

A petition for a rehearing was denied April 4. 2003.