Filed 7/2/14  P. v. Ochoa CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>JESUS VAZQUEZ OCHOA,<br><br>　　　Defendant and Appellant. | B244844<br><br>(Los Angeles County<br>Super. Ct. No. BA380304) |

APPEAL from an order of the Superior Court of Los Angeles County, Craig Richman, Judge.  Reversed in part and affirmed in part.

Sylvia Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Pamela C. Hamanaka, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Jesus Vazquez Ochoa contends the trial court erred by summarily revoking his probation absent a showing of willful violation, and the record must be corrected to accurately reflect the suspended sentence imposed. We agree with both contentions. We therefore reverse the court's order summarily revoking probation and deem the eight-year four-month sentence noted in the court's minute order to be correct.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Plea and grant of probation.*

A complaint filed on January 24, 2011 charged Ochoa with two counts of the manufacture or sale of a counterfeit mark (Pen. Code, § 350, subd. (a)(2),[1] and seven counts of manufacture or sale of a counterfeit mark with a prior (§ 350, subds. (a)(1), (b)). According to a probation report, police serving search warrants on January 13, 2011, discovered counterfeit Chanel, Louis Vuitton, Burberry, Coach, Gucci, Juicy Couture, Fendi, and Jimmy Choo handbags, wallets, and shoes at two businesses connected to Ochoa.

In a negotiated disposition, on February 10, 2011 Ochoa pleaded guilty as charged. In exchange, the trial court imposed a suspended sentence and placed Ochoa on five years formal probation. It imposed a variety of probation conditions, including that Ochoa: (1) pay a restitution fine; (2) "maintain residence as approved by the probation officer"; (3) "cooperate with the probation officer in a plan for probation;" (4) "obey all rules and regulations of the probation department;" and (5) "[k]eep [the] probation officer advised of your residence at all times." The court's minute order also stated: "If you leave the country, do not reenter the United States illegally. If you do return, report to the probation officer within 48 Hours and present documentation which proves you are in the United States legally." (Underlining in original.)

---

[1] All further undesignated statutory references are to the Penal Code.

2

2. *Revocation of probation and denial of coram nobis petition.*

In October 2012, the probation department requested Ochoa's probation be modified to a "grant without supervision" in light of the fact he had been "deported to Mexico" on August 24, 2012. The probation report explained: "Defendant's wife called the probation department to report that defendant had been deported and she was the one making the payments towards the financial obligation. On 09/18/2012 a call was made to Immigration Customs and Enforcement . . . [and] it was verified that the [immigration] court granted voluntary departure on 08/24/2012." The report noted that Ochoa had paid all but $16.70 on a $220 fine ordered in the case.

On October 24, 2012, Ochoa's counsel appeared before the court regarding the probation department's request. Counsel stated that Ochoa had "been apparently deported," and observed that the probation department was requesting that his probation be converted to nonsupervised. The trial court stated: "I have received notification from the probation department that Mr. Ochoa . . . was deported to Mexico on August 24th, 2012. Based upon the report, I will revoke probation and issue a bench warrant."

The next day, Ochoa's counsel filed a petition for a writ of error coram nobis, seeking reconsideration of the probation revocation order. Ochoa argued that revocation was improper because neither the probation department nor the district attorney had moved to revoke probation, and in any event, there was no evidence establishing Ochoa had willfully violated the terms of his probation. The trial court denied the motion, explaining, "[defense counsel] has now filed a 30-page writ of error . . . saying that . . . the probation department, who I could care less what they recommend, did not recommend his probation be revoked. They actually recommend[ed] it be converted to summary probation. And then the [d]istrict [a]ttorney didn't ask that Mr. Ochoa's probation be revoked. And then it says, 'nor [did] the court move[ ] to revoke Mr. Ochoa's probation.' I thought I did move to revoke his probation. I did in fact revoke his probation." The court continued: "I would agree with you to a certain extent that Mr. Ochoa, by being deported, is not in violation of his probation, and if Mr. Ochoa notified probation within 48 hours of his deportation, letting probation know where he

3

was in Mexico, which is a condition of his probation, *and I assume he did not do that*, and then if Mr. Ochoa does in fact return or when he returns to the United States—not if—he reports to probation within 72 hours, he also would not be in violation of his probation. Then probation would be reinstated nunc pro tunc. But I am well within the law at this point in time to revoke his probation and issue a no bail bench warrant. [¶] Your motion is denied." (Italics added.) When defense counsel asked if he could be heard, the trial court replied, "No."

Ochoa appeals.[2]

## DISCUSSION

1. *Revocation of probation.*

A court may summarily revoke probation "if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation . . . officer or otherwise that the person has violated any of the conditions of his or her [probation] . . . ." (§§ 1203.2, subd. (a); see 1203.3, subd. (a); *People v. Leiva* (2013) 56 Cal.4th 498, 504; *People v. Galvan* (2007) 155 Cal.App.4th 978, 981; *People v. Stanphill* (2009) 170 Cal.App.4th 61, 72.) We apply the substantial evidence standard when reviewing a trial court's finding of a probation violation. (*People v. Urke* (2011) 197 Cal.App.4th 766, 773.) The facts supporting revocation of probation may be proved by a preponderance of the evidence. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 439; *People v. Galvan, supra,* at p. 982; *People v. Kelly* (2007) 154 Cal.App.4th 961, 965.) The evidence must support a conclusion that the probationer's conduct constituted a willful violation of the terms and conditions of probation. (*People v. Moore* (2012) 211 Cal.App.4th 1179, 1186 ["a trial court may not revoke probation unless the defendant willfully violated the terms and conditions of probation"]; *People v. Cervantes* (2009) 175 Cal.App.4th 291, 295; *People v. Galvan, supra,* at p. 982; *People v. Zaring* (1992)

---

[2] It is not entirely clear whether Ochoa purports to appeal from the denial of his coram nobis petition, or from the order revoking probation. In the interests of judicial economy, we construe his appeal as being from the order revoking probation.

8 Cal.App.4th 362, 375-379; *People v. Quiroz* (2011) 199 Cal.App.4th 1123, 1129; *In re Victor L.* (2010) 182 Cal.App.4th 902, 913.) "Where a probationer is unable to comply with a probation condition because of circumstances beyond his or her control and defendant's conduct was not contumacious, revoking probation and imposing a prison term are reversible error." (*People v. Cervantes, supra,* at p. 295.) Trial courts have great discretion in deciding whether or not to revoke probation. (*People v. Kelly, supra,* at p. 965; *People v. Galvan, supra,* at pp. 981-982.) Absent abuse of that discretion, we will not disturb the trial court's decision. (*People v. Kelly, supra,* at p. 965.)

     a. *Dismissal of Ochoa's appeal.*

     The Attorney General first argues that Ochoa's appeal should be dismissed because he is no longer within the court's control, given the fact he has been deported. This argument is meritless.

     " 'That the court . . . has power to dismiss the appeal of an appellant who is a fugitive from justice has long been accepted as a proper exercise of the jurisdiction of the appellate courts of this state.' [Citation]. The fugitive disentitlement doctrine dates back to 1880 in California with *People v. Redinger* (1880) 55 Cal. 290 . . . , in which the Supreme Court dismissed an escaped defendant's appeal because '[i]t would be a farce to proceed in a criminal cause, unless the Court had control over the person charged, so that its judgment might be made effective.' " (*Polanski v. Superior Court* (2009) 180 Cal.App.4th 507, 531; *People v. Puluc-Sique* (2010) 182 Cal.App.4th 894, 896; *People v. Kubby* (2002) 97 Cal.App.4th 619, 622-623.)

     However, the record here does not establish that Ochoa is a fugitive from justice. As explained in *People v. Puluc-Sique, supra,* 182 Cal.App.4th 894: "[T]he People ask us to extend the appellate disentitlement doctrine to a defendant who has been deported from this country by United States Immigration and Customs Enforcement (ICE). . . . [A]bsent additional circumstances not presented here, a defendant who has been deported does not stand in the same shoes as one who has voluntarily placed himself beyond the court's control. We therefore deny the motion to dismiss the appeal." (*Id.* at p. 896.)

5

"Defendant is not a fugitive from justice, but was deported from the country by ICE. Though deportation might interfere with one's ability to comply with the conditions of probation, a defendant who has been involuntarily deported has not willfully flouted the court's orders in the same sense as one who has escaped custody or fled from the authorities. Consideration of an appeal by such a defendant does not threaten the integrity of the judicial system. Appellate disentitlement is, fundamentally, a doctrine based on forfeiture: a defendant who escapes or otherwise flees the authorities gives up the right to challenge a conviction or sentence while refusing to abide by its consequences. [Citation.] Absent some additional wrongful conduct by the defendant amounting to forfeiture of the right to challenge a judgment, deportation does not, in and of itself, warrant the dismissal of a pending appeal." (*Id.* at p. 898.)

As in *Puluc-Sique,* and unlike in the cases cited by the Attorney General (*People v. Redinger, supra,* 55 Cal. 290; *People v. Fuhr* (1926) 198 Cal. 593; *People v. Clark* (1926) 198 Cal. 453; *People v. Kubby, supra,* 97 Cal.App.4th at p. 619; *Polanski v. Superior Court, supra,* 180 Cal.App.4th 507), Ochoa has not escaped from custody or otherwise absconded. Nor, unlike in *People v. Brych* (1988) 203 Cal.App.3d 1068, does the record suggest Ochoa has failed to cooperate with his attorney, purposefully hidden his whereabouts, or otherwise used his absence for any particular advantage. (*People v. Puluc-Sique, supra,* 182 Cal.App.4th at p. 898.) *People v. Villa* (2009) 45 Cal.4th 1063, is also inapposite, as that case concerned the ability of a defendant who was not in actual or constructive state custody to petition for a writ of habeas corpus. (*Id.* at pp. 1072, 1075.) As we discuss *post,* Ochoa's departure from California was not voluntary in the sense the Attorney General suggests. Dismissal is not required.

b. *Failure to hold full revocation hearing.*

Ochoa argues that the trial court erred by revoking probation without conducting formal revocation proceedings, including a hearing at which he could confront and cross-examine adverse witnesses. (See *In re Wagner* (2005) 127 Cal.App.4th 138, 146.) However, the trial court appears to have summarily revoked Ochoa's probation; the record before us does not reflect a formal revocation or imposition of sentence. The

6

court's minute order states, "The court finds the defendant preliminarily in violation of probation."

As one court has explained: "Over the years, California courts have adopted the practice in probation violation cases of revoking probation first and asking questions later. Thus, in the typical case probation is preliminarily revoked based on the trial court's finding of probable cause to believe the person has violated the terms of probation. Following this summary revocation the person is entitled to a formal revocation hearing within a reasonable time at which he is entitled to the assistance of counsel, the opportunity to confront and cross-examine adverse witnesses, present his own witnesses and testify on his own behalf." (*In re Mehdizadeh* (2003) 105 Cal.App.4th 995, 999-1000, fns. omitted.) The summary revocation of probation " 'gives the court jurisdiction over and physical custody of the defendant and is proper if the defendant is accorded a subsequent formal hearing in conformance with due process. [Citation.] [¶] Therefore, after the summary revocation, the defendant is entitled to formal proceedings for probation revocation.' " (*People v. Leiva, supra,* 56 Cal.4th at p. 505; *People v. Freidt* (2013) 222 Cal.App.4th 16, 21-22.) Because the trial court summarily revoked probation, there was no error in failing to hold a formal revocation hearing at this stage. Moreover, the hearing could not transpire while Ochoa was absent. (See *People v. Leiva*, *supra*, at p. 519 (conc. opn. of Baxter, J.).)

    c. *The trial court's revocation order was an abuse of discretion.*

Ochoa argues there was no evidence before the trial court that he willfully violated probation, and therefore the court's summary revocation was an abuse of discretion. We agree.

As we and other courts have held, a defendant's failure to appear for a probation hearing due to his or her immigration status does not constitute a willful probation violation. In *Cervantes,* for example, the defendant was unable to appear for a 30-day probation review hearing because he was in the custody of immigration authorities. Under these circumstances, he was not in violation of probation. (*People v. Cervantes, supra,* 175 Cal.App.4th at p. 293.) *Cervantes* explained: "Where a probationer is unable

7

to comply with a probation condition because of circumstances beyond his or her control and defendant's conduct was not contumacious, revoking probation and imposing a prison term are reversible error." (*Id.* at p. 295.)

In *Galvan,* the defendant was required to (1) report to his probation officer within 24 hours of his release from jail, and (2) if he left the United States, to report to the probation officer within 24 hours after returning and present documentation proving he was legally in the country. (*People v. Galvan, supra,* 155 Cal.App.4th at pp. 980-981.) After his release from jail, Galvan was deported to Mexico and was subsequently arrested in the United States. He never contacted his probation officer. (*Id.* at p. 982.) We held that the trial court abused its discretion by revoking Galvan's probation. (*Id.* at pp. 980, 983-984.) It was impossible for Galvan to personally report to the probation officer within 24 hours of his release from jail, because he had been deported; therefore his failure to report was not willful. (*Id.* at pp. 983, 984.) As for his failure to report to probation within 24 hours of reentry into the United States, the record contained no evidence showing how long he had been back in the United States before his arrest. Thus, there was no evidentiary basis for revoking probation on that ground. (*Id.* at pp. 982-983; see generally *People v. Leiva, supra,* 56 Cal.4th at p. 517.)[3]

Similarly, here, the mere fact Ochoa voluntarily departed the United States in lieu of deportation does not establish a willful violation of probation. Indeed, when ruling on the coram nobis petition the day after summarily revoking probation, the trial court stated, "I would agree with you to a certain extent that Mr. Ochoa, by being deported, is not in violation of his probation . . . ." Contrary to the Attorney General's position, the

---

[3]    In contrast, *People v. Campos* (1988) 198 Cal.App.3d 917 held that a "defendant who is deported while on probation may be found in violation of that probation for failure to report to the probation department although his deportation makes it impossible for the defendant to fulfill this condition of his probation." (*Id.* at p. 923.) In *Galvan,* we declined to follow *Campos,* noting that the opinion failed to explain "how a failure to report in the deportation situation could be willful." (*People v. Galvan, supra,* 155 Cal.App.4th at p. 985, fn. 4; see also *People v. Cervantes, supra,* 175 Cal.App.4th at pp. 295-297.)

8

fact Ochoa opted for a "voluntary departure," apparently pursuant to title 8 of the United States Code section 1229c(a), does not establish he willfully left California. Section 1229c(a) of the United States Code provides that under certain conditions, an alien may accept voluntary departure in lieu of deportation.[4] "Voluntary departure is a discretionary form of relief that allows certain favored aliens—either before the conclusion of removal proceedings or after being found deportable—to leave the country willingly." (*Dada v. Mukasey* (2008) 554 U.S. 1, 8.) Voluntary departure may be advantageous to an alien: " 'An alien in the United States becomes subject to exclusion only if actually deported; some deportable persons who agree to depart the United States at their own expense may have available a voluntary departure remedy not entailing exclusion from reentry.' [Citation.]" (*People v. Bautista* (2004) 115 Cal.App.4th 229, 237, fn. 5; *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 208.) Thus, while Ochoa's departure was voluntary in the sense that he opted for voluntary departure rather than deportation, this does not show willfulness. Given that immigration officials had begun proceedings to remove him from the country one way or another, Ochoa was not at liberty to stay in California.

Moreover, even if Ochoa had voluntarily left the United States, the record before us does not suggest this would have been a violation of the terms of his probation. The probation conditions provided: "If you leave the country, do not reenter the United States illegally. If you do return, report to the probation officer within <u>48 Hours</u> and present documentation which proves you are in the United States legally." (Underlining in original.) The conditional "if" language suggests Ochoa was not forbidden by the

---

**4**     Title 8 of the United States Code section 1229c(a)(1) provides in pertinent part: "The Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense under this subsection, in lieu of being subject to proceedings under section 1229a of this title or prior to the completion of such proceedings, if the alien is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4)(B) of this title."

9

conditions of probation to leave the country. He cannot be faulted for failing to follow a condition that did not exist.

The Attorney General argues that by going to Mexico, Ochoa also violated the terms of his probation requiring that he cooperate with the probation officer in formulating a probation plan, maintain an approved residence, and obey the probation department's rules and regulations. Based on the record before us, there is no evidence Ochoa's departure violated any of these terms. The probation department did not allege Ochoa had failed to do any of these things.

The trial court initially based its order revoking probation on the report that Ochoa had been deported without specifying any further reason. At the subsequent hearing the court added that advising the probation department of his whereabouts in Mexico after deportation was "a condition of his probation, and I assume he did not do that . . . ." But an assumption is not evidence. While a trier of fact can make reasonable inferences from the evidence, nothing in the record suggested Ochoa failed to fulfill this requirement in a timely manner. To the contrary, the probation report stated that Ochoa's wife had, on an unspecified date, alerted the probation department to Ochoa's deportation. There is no evidence the wife's call was untimely, that she failed to provide his address, or that Ochoa was required to personally call, as opposed to having a family member in the United States relay the information to the probation department. Indeed, the fact the probation department did not request Ochoa be found in violation of probation suggests the opposite. (See generally *People v. Galvan, supra,* 155 Cal.App.4th at pp. 982-983 [where the record contained no evidence that defendant failed to report to probation within 24 hours of reentry into the United States, there was "no evidentiary basis for revoking probation on that ground"].) Under these circumstances, there was no substantial evidence that Ochoa violated a term of probation, and the summary revocation was an abuse of discretion.

2. *Correction of the record.*

After Ochoa pleaded guilty to counts 1, 2, 3, 5, 7, 9, 11, 13, and 15, the trial court orally sentenced him to "high term nine years state prison, execution suspended." The

10

court's more detailed nunc pro tunc minute order states that it sentenced Ochoa to the high term of three years on count 1, and consecutive terms of eight months, or one-third of the midterm, on the remaining eight counts, for a total of eight years four months. Ochoa requests that, because the trial court's erroneous nine-year calculation contained in the reporter's transcript could cause an increase in his sentence in the future, we should correct it. The Attorney General agrees that the nine-year term is erroneous.

We agree with the parties. As a general rule, when the record of the court's oral pronouncement regarding sentencing conflicts with the clerk's minute order, the oral pronouncement controls. (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2; *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [abstract of judgment is not the judgment of conviction and does not control if different from the trial court's oral judgment, and may not add to or modify the judgment it purports to summarize]; *People v. Price* (2004) 120 Cal.App.4th 224, 242 ["Any discrepancy between the minutes and the oral pronouncement of a sentence is presumed to be the result of clerical error. Thus, the oral pronouncement of sentence prevails in cases where it deviates from that recorded in the minutes"].) This rule is not absolute, however. " '[W]hether the recitals in the clerk's minutes should prevail as against contrary statements in the reporter's transcript, must depend upon the circumstances of each particular case.' [Citations.]" (*People v. Smith* (1983) 33 Cal.3d 596, 599; see *People v. Cleveland* (2004) 32 Cal.4th 704, 768; *People v. Malabag* (1997) 51 Cal.App.4th 1419, 1422-1423 ["When a clerk's transcript conflicts with a reporter's transcript, the question of which of the two controls is determined by consideration of the circumstances of each case"].)

Here, because counts 2, 3, 5, 7, 9 11, 13, and 15 were subordinate, the court should have imposed one-third the midterm, or 8 months, on each. (§ 1170.1, subd. (a).) Therefore, the correct suspended term is, as the parties aver, eight years four months. "Under the circumstances, we will deem the minute order . . . to prevail over the reporter's transcript. [Citations.] The erroneous statement in the reporter's transcript is of no effect." (*People v. Cleveland, supra,* 32 Cal.4th at p. 768.)

11

DISPOSITION

The order summarily revoking Ochoa's probation is reversed. The nunc pro tunc minute order dated February 3, 2011 is deemed to state the correct suspended sentence of eight years four months. In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KLEIN, P. J.

KITCHING, J.