Filed 7/23/25  Eleanor M. v. Samuel M. CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ELEANOR M., <br><br> Appellant, <br><br> v. <br><br> SAMUEL M., <br><br> Respondent. | D083833 <br><br><br> (Super. Ct. No. 21FL009971E) |

APPEAL from an order of the Superior Court of San Diego County, Leah Boucek, Commissioner.  Dismissed.

The Law Office of Evan D. Williams and Evan D. Williams for Appellant.

Samuel M., in pro. per., for Respondent.

INTRODUCTION

The family court found Eleanor M.[1] posted *false* statements to a broad audience on her Instagram account accusing her then husband, Samuel M., of raping and sexually assaulting her during their marriage. The court issued a domestic violence restraining order (DVRO) to enjoin Eleanor from further abuse and awarded Samuel sole legal and sole physical custody of the parties' three children.

Eleanor filed a notice of appeal challenging the DVRO. The very next day, at a hearing on custody, Eleanor asserted that the courts of California had no jurisdiction over her or the children. She then violated the custody orders by absconding with the children to Florida until she was arrested four months later and extradited back to California. After being convicted of felony child abduction and released on pretrial supervision, Eleanor defiantly resisted the criminal court's order that she report to and cooperate with the probation department for sentencing, asserting neither the court nor the probation department had any authority over her. On this record, we agree with Samuel that dismissal of the appeal is a proper sanction under the disentitlement doctrine. However, even if we declined to dismiss the appeal, we would reject Eleanor's claims of error on the merits and affirm the DVRO.

---

[1] Eleanor has since remarried and changed her legal name to Eleanor B. We shall refer to the parties, however, by their first names to maintain their privacy.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*The Evidence*[2]

Samuel and Eleanor were married in 2012 and have three young children. They separated in April 2019 but continued to reside in the same home until December 2020. Since Eleanor filed a petition for dissolution in September 2021,[3] the parties have engaged in protracted litigation over custody of their children.

On January 10, 2023, the parties attended their third Family Court Services (FCS) mediation. Under the custody order at the time, the parties shared joint legal and joint physical custody of the children, with the children primarily residing with Eleanor. At the mediation, Samuel asked for sole legal and sole physical custody of the children and supervised visitation for Eleanor. He told the FCS mediator that Eleanor's fiancé (now husband, Chris B.) had purchased a gun for the parties' son and that Eleanor was

---

[2] The parties and their attorneys stipulated to have a court Commissioner (the Commissioner) act as temporary judge for all purposes on March 1, 2023. Under the governing standard of review, we summarize the evidence *supporting* the trial court's order granting Samuel's DVRO request. (*In re Marriage of G.* (2017) 11 Cal.App.5th 773, 780 [We accept as true all evidence tending to establish the correctness of the trial court's findings and resolve every conflict in favor of the judgment.]; *Niko v. Foreman* (2006) 144 Cal.App.4th 344, 364–365 ["All conflicts in the evidence are drawn in favor of the judgment," and "[w]hen supported by substantial evidence, we must defer to the trial court's findings," including its finding on the credibility of witnesses.].)

[3] A judgment of dissolution terminating the parties' marital status was entered March 27, 2023.

filming pornography for her OnlyFans account in her home and the children could be heard in the background.[4]  This angered Eleanor.

After the FCS mediation, on or about January 10, 2023, Eleanor posted "stories" on her public Instagram account accusing Samuel of raping and sexually assaulting her during their marriage, that he suffered from a mental illness, that he had engaged in a "smear campaign" with his parents to ruin her reputation, and that he physically abused or neglected their daughter. The text of the posts was displayed on top of photographs of Eleanor, including Eleanor with the parties' three children.

As "a social media influencer," Eleanor has a broad audience that included 42,800 "followers" on Instagram, 102,000 followers on TikTok, and 61,000 followers on Facebook.  The content on her social media accounts, including Instagram, is public and can be accessible by anyone who is not blocked.  Although the January 10 posts appeared for 24 hours or less before they are "deleted forever" from Instagram, a person can capture and save the posts by "screenshott[ing]" them.

Shortly after the FCS mediation, Samuel was contacted by friends and family about Eleanor's posts.  This included his mother, father, neighbor, the neighbor's hairdresser, and numerous friends, some of whom screenshotted

---

[4]     According to Eleanor, OnlyFans is "a fan site" where a person could pay a monthly membership fee to have "direct exclusive access" to Eleanor's video content which was "sexual in nature."  Eleanor admitted she sometimes filmed pornography for her OnlyFans account from her home, including on her custodial days with the children, but denied the children were present during any filming.  An explicit video from Eleanor's OnlyFans account "with children's voices in the background" was played for the court.  Samuel testified the child's voice in the background was that of the parties' youngest daughter.

the posts and sent them to Samuel because they found the posts "terrible," "disturbing" and of "pretty extreme behavior."

Samuel is a Lieutenant Commander in the United States Navy. He is a helicopter pilot who flies the MH-60 Serum, "the Navy's version of a Black Hawk," and in that capacity he operates weapons. To qualify for his position, the Navy requires Samuel to undergo "rigorous testing and ongoing testing," including psychological assessments. Samuel's personal life is a factor in the Navy's evaluation of his "ability to continue to safely fly." Consequently, Samuel disclosed Eleanor's accusations of sexual abuse to his chain of command, which had potential repercussions on his military career.

On January 17, 2023, Samuel, through his attorney, filed a request for a restraining order against Eleanor. He denied Eleanor's accusations of marital rape and sexual assault made on her Instagram account. He asserted her "false" and "libelous" statements disturbed his and his family's peace and constituted harassment. (Boldface omitted.) In particular, he stated the false allegations could damage his military career. The court issued a temporary restraining order (TRO) against Eleanor and granted Samuel temporary sole legal and sole physical custody of the children but denied his request to include them as protected parties.

The next day, on January 18, 2023, Eleanor (without her counsel of record) filed a request for a restraining order against Samuel. She alleged Samuel "sexually assaulted [her] in April 2013 when he coerced her to perform oral sex on him" and he "continued a cycle of abuse from April 2013 to 2019," including committing "marital rape against her in their family home on September 2, 2019, with their children present." She asserted that "after she pursued criminal charges for marital rape," Samuel "sexually harassed her by abusing the legal process through requests for admissions regarding

5

her sexual life with her new partner." The court issued a TRO against Samuel but denied Eleanor's requests to include the children and her fiancé as protected parties and for custody of the children. At the evidentiary hearing, the only evidence Eleanor presented to show she pursued criminal charges against Samuel was an email, "dated right after" the January 10, 2023 FCS mediation, from a detective explaining how to get a restraining order.

## II.

### *The Trial Court's Ruling*

On June 21, 2023, the family court issued its rulings from the bench. The court found Eleanor failed to meet her burden of proof because she was not a credible witness and denied her request for a restraining order against Samuel. By contrast, the court found Samuel had met his burden of proof and established that Eleanor committed abuse by engaging in conduct that destroyed his emotional and mental calm. The court entered a "Restraining Order After Hearing" (ROAH) against Eleanor enjoining her from further abuse for the period of two years. Consequently, the court applied the unrebutted Family Code[5] section 3044 presumption against awarding sole or joint custody to Eleanor and awarded Samuel sole legal and sole physical custody of the children, with Eleanor parenting the children on alternate weekends and every Tuesday and Thursday afternoons.[6]

---

[5] All further undesignated statutory references are to the Family Code.

[6] In her notice of appeal, Eleanor specifies the June 21, 2023 "Order Granting or Denying a Domestic Violence Restraining Order." However, in her briefing on appeal, she makes no argument challenging either the denial of her request for a restraining order nor the court's child custody and visitation orders. Any such argument is deemed waived. (See *Tiernan v.*

6

On September 8, 2023, the Commissioner issued a signed, 30-page proposed statement of decision, which hewed closely to the court's oral rulings from the bench on June 21.[7] On October 5, the Commissioner voluntarily recused herself from hearing or taking any further action in the case. On December 19, the family court's supervising judge entered the proposed statement of decision, without any changes, as the court's final statement of decision pursuant to Code of Civil Procedure section 635.[8]

As stated in the final statement of decision, the family court found Eleanor was "not credible." As to Eleanor's allegations that Samuel raped or sexually abused her during the marriage, the family court was explicit: "To be clear, the [c]ourt does not believe [Eleanor's] testimony about sexual abuse in 2013 or in 2019." The court found that although Eleanor testified "she told

---

*Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issue not raised on appeal deemed waived]; *Eck v. City of Los Angeles* (2019) 41 Cal.App.5th 141, 146 [same].)

[7] Although "[t]he issuance of a restraining order is appealable as an order granting an injunction under Code of Civil Procedure section 904.1" (*Molinaro* v. *Molinaro* (2019) 33 Cal.App.5th 824, 831, fn. 6 (*Molinaro*)), counsel for Eleanor filed a request for a statement of decision on June 30, 2023. The trial court issued a statement of decision because it determined the attached custody orders warranted it. Doing so, the court reasoned, "essentially turns the reasons provided on the record for the issuance of the ROAH into a tentative decision pursuant to [California Rules of Court, rule] 3.1590(a) because otherwise there's no 'tentative' decision from which to seek a statement of decision." We need and do not determine whether the court was correct on this point.

[8] The court noted that Eleanor filed objections to the proposed statement of decision, on September 25, 2023, and it had not ruled on those objections "as the judicial officer hearing the evidence is no longer available." The Appellant's Appendix does not contain a copy of the objections and thus we have no occasion to consider them.

several friends and her sisters" about the alleged sexual abuse, Eleanor "did not present any witnesses or evidence as to any sexual assaults that occurred during the marriage other than Dr. Wise [(the parties' divorce coach)] who testified that she did not find the marital rape allegation credible." And although Eleanor testified that she pursued criminal charges, the court found "[t]here was no evidence presented that [Eleanor] pursued criminal charges against [Samuel] except for an email from a detective to [Eleanor] explaining how to get a restraining order which was dated right after" the FCS mediation on January 10, 2023. The court also found that despite the allegations of ongoing sexual abuse and a rape in September 2019, Samuel provided "multiple pages" of text messages between the parties engaged in "sexual banter that had been common during their marriage into their separation" and that Eleanor "participated in the communications" by "responding in kind as well as sending a heart emoji response to show that she had 'loved' the message[s] on multiple occasions." Because of these "credibility issues," the court found Eleanor's "claims of sexual assault not credible" and that she failed "to show that a sexual assault occurred in April 2013 or that a marital rape occurred in September 2019." Consequently, the court found Eleanor did not meet her burden of demonstrating any abuse by Samuel and denied her request for a restraining order.

The court found Samuel credible and that there was "overwhelming evidence" that Eleanor "disturbed his peace and destroyed his mental calm." Specifically, the court found Eleanor's Instagram posts included "false, misleading or reckless" allegations that Samuel committed "marital rape, torture, sexual assault, betrayal, . . . physical abuse against their [youngest] daughter," and that Samuel had "a mental illness" and engaged in a "smear campaign against her." The court found that Eleanor made these false

8

statements to her "public social media to a very large audience with the intent of causing emotional disruption to [Samuel] and his family in retaliation for [Samuel's] requests" for full custody of the children and informing FCS that Eleanor was "filming adult content in her home with the children present."

The court rejected Eleanor's arguments that the posts were not about Samuel or his family because she did not specifically name them; that the posts "could not have been directed to [Samuel] or his parents because they were not sent directly to them and they had been blocked from her social media since 2022"; and that "her social media posts are satire" and her "social media presence is an 'act.'" Instead, the court believed Eleanor created the posts "knowing that it would be seen by potentially thousands of people" and that she was aware of the "potential impact of her actions" on Samuel's military career.

On this point, the court highlighted a March 18, 2022 Talking Parents message to Samuel that showed "when she was pregnant with her fourth child and frustrated the parties had not been able to settle their divorce, she contacted [Samuel's] command to ask for support even though she knew the baby was not [Samuel's]." In the Talking Parents message, Eleanor told Samuel his alleged failure to pay child support was "[n]ot a very good reflection on the Navy or you [as a] military officer" and "I want your reputation to be in good standing." Based on this evidence, the court further found Eleanor "knew that reporting him could have an adverse impact on [his] career and career advancement" and "intentionally threatened [Samuel] with adverse employment implications in order to compel him to do what she wanted, which was to pay her more money."

9

In sum, the family court found overwhelming evidence that Eleanor's Instagram posts were "not only false but intended to have an adverse impact on [Samuel] in his familial, social and employment relationships, not to mention the leverage that it appears she hoped to gain in the dissolution litigation."[9]

DISCUSSION

I.

*Dismissal Is Warranted Under the Disentitlement Doctrine*

Samuel, who is representing himself on appeal, has moved to dismiss this appeal under the doctrine of disentitlement. Under this doctrine, an appellate court has the inherent power to dismiss (or stay) an appeal by a party that refuses to comply with a lower court order. (*In re E.M.* (2012) 204 Cal.App.4th 467, 474; *In re Marriage of Hofer* (2012) 208 Cal.App.4th 454, 459 (*Hofer*).) Although most often applied where the appeal arises out of the very order (or orders) the party has disobeyed, the doctrine of disentitlement "is *not* limited to cases in which the appellant is in violation of the order from which he or she appeals, but rather may also apply to cases in which the appellant has violated orders other than the one from which the appeal has been taken." (*In re E.M.*, at p. 477, italics added; *In re A.K.* (2016) 246 Cal.App.4th 281, 286.)

Appellate disentitlement " 'is not a jurisdictional doctrine, but a discretionary tool that may be applied [to dismiss an appeal] when the

_____

[9]    In the statement of decision, the court also addressed, and rejected, Eleanor's arguments (raised for the first time after the evidentiary hearing) that the DVRO violated her First Amendment right to free speech. On appeal, Eleanor maintains her constitutional claim and thus we discuss the court's findings on this issue later in our analysis.

balance of the equitable concerns make it a proper sanction.' " (*In re E.M.*, *supra*, 204 Cal.App.4th at p. 474.) The doctrine is based on the equitable notion that "[a] party to an action cannot . . . ask the aid and assistance of a court in hearing [her] demands while [she] stands in an attitude of contempt to legal orders and processes of the courts of this state." (*Macpherson v. Macpherson* (1939) 13 Cal.2d 271, 277 (*Macpherson*); *In re E.M.*, at p. 476.) Stated another way, " '[i]t is contrary to the principles of justice to permit one who has flaunted the orders of the courts to seek judicial assistance.' " (*Findleton v. Coyote Valley Band of Pomo Indians* (2021) 69 Cal.App.5th 736, 756 (*Findleton*).) Importantly, " '[a] formal judgment of contempt . . . is not a prerequisite to exercising [an appellate court's] power to dismiss; rather, we may dismiss an appeal where there has been *willful disobedience or obstructive tactics.*' " (*In re E.M.*, at p. 477; accord *Findleton*, at p. 756; *In re A.K.*, *supra*, 246 Cal.App.4th at pp. 285–286.)

Samuel urges this court to dismiss Eleanor's appeal under appellate disentitlement on the grounds that Eleanor has refused "to comply with any court orders" and "has engaged in nearly every conceivable type of conduct that the disentitlement doctrine is meant to combat," including "kidnapping three minor children and fleeing from California to Florida." (Capitalization omitted.) In opposing the motion to dismiss, Eleanor (represented by counsel in this appeal) asserts Samuel's motion to dismiss is "frivolous," he has presented "no facts" to support his motion, and her appeal is meritorious. We are not persuaded, by any of Eleanor's contentions.

In deciding whether to apply the disentitlement doctrine, we do not consider the merits of the appeal. (*Ironridge Global IV., Ltd. v. ScripsAmerica, Inc.* (2015) 238 Cal.App.4th 259, 265 *(Ironridge)*.) And we disagree Samuel's motion is frivolous or lacks factual support. In support of

11

his motion, Samuel has filed evidence of Eleanor's post-judgment conduct,[10] including that she violated the court's child custody orders by absconding

[10] Samuel has filed four requests for judicial notice in support of his motion to dismiss the appeal. Eleanor has filed an opposition to the first three requests filed on October 30, November 18, and November 19, 2024, but not to the fourth. Although we agree with Eleanor's observation that Samuel has not strictly complied with California Rules of Court, rule 8.252(a)(1), any deficiency has not precluded our ability to determine the relevance or nonrelevance of the documents provided. In her opposition to the motion to dismiss, Eleanor further asserts Samuel has provided "irrelevant documents" that are from "unrelated cases and hearings which have occurred after the judgment in this case was entered." This is not a reason, either, to deny his requests. Where a party asserts that post-judgment disobedience of court orders has triggered the disentitlement doctrine, as Samuel does here, appellate courts will necessarily consider evidence of post-judgment conduct in determining whether a party is deprived of their right to appeal under the doctrine of disentitlement. (*Ironridge, supra*, 238 Cal.App.4th at pp. 265–266 [appellate court took judicial notice of certificates filed with the SEC showing appellant violated court order by transferring stock to third parties after order was entered].) For these reasons, we reject Eleanor's invitation to deny wholesale Samuel's requests for judicial notice and rule as follows. We deny the request for judicial notice of Exhibits A, C, I, J, K, and L filed on October 30, 2024; Exhibits M, N, R, and S filed on November 18, 2024; and Exhibits T, U, and V filed on November 19, 2024. Our reasons include that they are not necessary or helpful to the resolution of the motion (A, C, I, J, K, L, and S) and are duplicative of documents already contained in the record on appeal (M, N, R, T, U, and V). We grant the request for judicial notice of Exhibits B, D, E, F, G, and H filed on October 30, 2024 and Exhibits O, P, and Q filed on November 18, 2024. (Evid. Code, § 452, subd. (d)(1) [records of any court of this state] and (d)(2) [any court of record of the United States or of any state of the United States].) We need not take judicial notice of Exhibit T because it is Samuel's reply declaration to the opposition to the motion to dismiss. As for his request for judicial notice filed March 10, 2025, because Samuel submits two exhibits repeating the labels T and U, we refer to them also by their substance to avoid confusion. We deny the request for judicial notice of the two-page document entitled "Warrant Detail" (Exhibit T; capitalization omitted) as it lacks foundation. We grant the request for judicial notice of the 12-page Probation Officer's Report dated February 28,

with the children for four nearly months and, as a result, has been convicted of child abduction *during the pendency of her appeal*, and that she continues to disregard the legal orders of the superior court, until as recently as March 2025.

One day after Eleanor filed her notice of appeal in this case, on December 19, 2023, Eleanor appeared (in pro per) before the family court (Judge Christopher Morris) for a hearing on *her motions* to modify the child custody and visitation orders. Although she invoked the court's authority to grant her relief, Eleanor immediately objected to the court's jurisdiction. When the court attempted to swear in both parties to take testimony to determine the children's best interests, Eleanor refused. Despite asserting her "right to remain silent," Eleanor testified without taking the oath. She then again asserted, "I did not and I do not and I object in totality to the state of California, this [c]ourt, or anyone in here having any jurisdiction over the minor children[.]" The court denied Eleanor's request to modify custody, ordered the parties to participate in a section 730 custody evaluation, and scheduled an evidentiary hearing for February 5, 2024. Eleanor did not appear for the February 5, 2024 hearing, nor for any future dates the family court would set.

While the parties were in court on December 19, 2023, the children were in Eleanor's care and she was to return them to Samuel at 7:00 p.m., pursuant to the custody orders in effect. She willfully failed to do so. On Christmas, December 25, Samuel sent Eleanor a text message to ask when she would be returning the children to him. She responded with "several lengthy text messages," stating "she would be 'making up the 139 days' he

2025 and filed in superior court case No. SCD302834 (Exhibit U). (Evid. Code, § 452, subd. (d)(1) [records of any court of this state].)

13

had kept the children from her in the past." On December 27, Samuel filed an ex parte application for emergency relief. The family court (Judge C.J. Mody) found Eleanor "had violated the [c]ourt order and had no legal right to custody of the children." The court set a review hearing for January 1, 2024 but Eleanor did not appear. The court ordered Eleanor to appear with the children at three additional hearings in February and March. Again, Eleanor did not appear. The court then referred the matter to the San Diego County District Attorney's Office Family Protection Division/Child Abduction Unit.

On January 9, 2024, the children's elementary school contacted Samuel to inform him that Eleanor tried "to permanently remove all three children from the school but was denied as she did not have the right to do so." Investigators determined Eleanor's vehicle had registered on license plate readers in Arizona on January 11 and then in Georgia on February 6. Samuel found reviews Eleanor had posted on Airbnb.com for her stays at various properties across the country in January and February. In February, Samuel reported the children missing and their names were entered into the nationwide missing children database.

On March 4, 2024, after a District Attorney Investigator (DAI) sent numerous demand letters to multiple known addresses for Eleanor and left voicemail messages for her to contact the Child Abduction Unit, an attorney from Virginia reached out to the DAI stating he was "only calling as a friend" of Eleanor and her family. "The attorney sent a letter with a list of ways to resolve the case." In response, the DAI told him an arrest warrant would be issued and "hoped the children would be returned[to] California before" March 20. The attorney responded, " 'It's kind of hard to resolve issues when one side [(meaning, Samuel)] refuses to respond to an offer to talk.' "

14

"Information was learned that [Eleanor] had fled to Florida with all three children." An extraditable arrest warrant for Eleanor was issued on March 22, 2024. On March 28, the U.S. Marshals began investigating Eleanor's whereabouts and an emergency request was submitted to the Airbnb Law Enforcement Portal. The U.S. Marshals were provided with her location in Clermont, Florida. On April 1, Eleanor was arrested in Clermont and "[a]ll three children were found safe." The children did not want to speak with the DAI and "the oldest child specifically stated, 'Don't record us. You don't have the right to record us. Turn it off. I don't want to see my father. He had a chance already. He had an opportunity to see us.'" Samuel flew to Florida and was reunited with his children.

On July 16, 2024, Eleanor was extradited to California and booked into custody in San Diego. The District Attorney charged Eleanor with multiple felonies, including kidnapping and child abduction. On January 8, 2025, Eleanor pled guilty to one felony count of child abduction. Pursuant to the negotiated plea agreement, the criminal court would place Eleanor on three years of formal probation. Pending sentencing, the court granted Eleanor release on pre-trial supervision with a GPS monitor and ordered her to report to the Probation Department upon her release. She failed to do so.

When the probation officer contacted Eleanor for her probation interview, "she presented as extremely hostile and essentially said Probation had no authority over her nor did the Judge in this case." As of March 6, 2025, when the probation officer submitted his report, Eleanor still had not reported to probation for an interview as directed by the court, which the officer noted "may be a violation" of her plea agreement. According to the officer, Eleanor "displayed a blatant disregard for any and all directives and

does not seem deterred by consequences." The officer recommended Eleanor be remanded into custody.

Although Eleanor acknowledges in her opposition to the motion to dismiss that she was "arrested" during her appeal, she does not tell us why she was arrested nor mention the fact that she violated the court's custody orders or was convicted of child abduction. The record before us demonstrates that Eleanor has engaged in an unmitigated pattern of flagrantly violating court orders and obstructive tactics that began only one day after she filed her notice of appeal, and it has persisted for *over a year during the pendency of her appeal*. She abducted the children and concealed them from Samuel for nearly four months in violation of the law and the child custody orders, and her actions arguably constitute further disturbance of Samuel's peace in violation of the ROAH from which she has appealed. She has told the superior court in clear terms that it has no jurisdiction over her (or the parties' children) in the family case. And she has continued in this contemptuous posture by refusing to comply with the court's orders in the criminal case, which is but an outgrowth of her violations of orders in the family case. (See *MacPherson*, *supra*, 13 Cal.2d at pp. 272–273, 275 [applying disentitlement to dismiss father's appeal from family court order that he pay attorney fees, expenses and costs incurred in furtherance of mother's efforts to locate children and have them returned to her, including obtaining an arrest warrant charging father with "child stealing"].)

Less egregious conduct than Eleanor's has resulted in appellate courts applying the disentitlement doctrine as the proper sanction. (See e.g., *Findleton*, *supra*, 69 Cal.App.5th at pp. 753–754 [dismissing five appeals arising out of construction contract dispute where appellant violated and obstructed lower court orders compelling arbitration, production of

16

documents, and imposing discovery sanctions]; *Hofer*, *supra*, 208 Cal.App.4th at p. 460 [dismissing husband's appeal from family court's order that he pay wife's attorney fees and costs where husband refused to comply with wife's discovery requests and violated court's discovery orders]; *Blumberg v. Minthorne* (2015) 233 Cal.App.4th 1384, 1392 [dismissing trustee's appeal in dispute about administration of family trust where trustee "missed court dates, failed to keep her own promises, lacked candor in her communications with the court, and ignored the court's orders"].)

Similar conduct, on the other hand, has warranted dismissal under appellate disentitlement. For example, in *In re A.K.*, a father in a dependency case was found to have "possessed 'an attitude of contempt to legal orders' and the dependency process," in which he "threatened the social workers with physical harm, forcing the need for police intervention, refused to answer questions, and specifically told a social worker that he would not do anything the social worker requested of him. At the detention hearing, he left the court without notifying his lawyer in advance, denying the court the ability to ask him any questions." (*In re A.K.*, *supra*, 246 Cal.App.4th at p. 286.) He also refused to comply with court-ordered drug tests and refused to provide information necessary to determine whether the child had Native American ancestry. (*Ibid.*) Finding that father's behavior demonstrated "an extraordinary and unmitigated pattern of obstruction," the appellate court dismissed his appeal from the juvenile court's order removing his child from his custody. (*Ibid.*)

We have considered that enforcement of the family court's child custody orders or the DVRO might not *currently* be a concern, given that Eleanor has been convicted of child abduction and the children presumably are safe in

17

Samuel's custody.[11] (See *Hofer*, *supra*, 208 Cal.App.4th at p. 459 [dismissal under the appellate disentitlement doctrine is to "induce compliance" with a presumptively valid lower court order (cleaned up)]; cf. *People v. Kang* (2003) 107 Cal.App.4th 43, 51–52 [court considered, in context of fugitive disentitlement doctrine, that enforceability was no longer a problem because appellant was "now in custody and no longer a fugitive"].)  But here, Eleanor has defiantly resisted the authority of the courts of California, asserting no court has jurisdiction or power over her.  Based on her conduct, we are confident " 'her attitude will be the same toward any judgment or order made by this court in disposing of her appeal.' " (*MacPherson*, *supra*, 13 Cal.2d at p. 278.)  As one court has stated, the "need to vindicate the integrity of the judicial system has been considered, under some circumstances, so significant that the disentitlement doctrine has been imposed on a nonfugitive defendant who has signaled by [her] conduct that [s]he will only accept a decision in [her] favor." (*Polanski v. Superior Court* (2009) 180 Cal.App.4th 507, 532.)  Under these circumstances, we conclude the balance of equitable concerns make dismissal a proper sanction.

## II.

### *Even If We Declined to Dismiss Eleanor's Appeal,*
### *We Would Reject Her Claims of Error on the Merits*

Eleanor attacks the DVRO on two grounds:  (1) The DVRO is void ab initio because the Commissioner was disqualified at the time of the

---

11    We have no information, from either Eleanor or Samuel, as to any events since the March 6, 2025 recommendation by the probation officer to remand Eleanor into custody for failing to follow the criminal court's orders.

evidentiary hearing. (2) Her Instagram posts were a valid exercise of her First Amendment right of free speech. Neither contention has merit.

A. *The DVRO Is Not Void Ab Initio*

We provide some additional background relevant to Eleanor's first contention that the DVRO is void ab initio. On September 13, 2023, five days after the Commissioner issued her proposed statement of decision, Eleanor (despite being represented by counsel) filed in pro per a "Motion to Support the Withdrawal to Stipulation of the Appointment of Referee." Eleanor signed a written stipulation to have the Commissioner decide her matter but now claimed she "did not know" she was agreeing to have her case heard "by an attorney acting as judge." But in the very next sentence, Eleanor asserted she told her attorney that she did not agree to the Commissioner, and thus he rendered "ineffective counsel" by failing to raise the issue.

In the same motion, Eleanor (without any factual support) claimed the Commissioner failed to disclose that she had a "personal relationship" with Samuel, the children's babysitter, one of the children's teachers, and the children's elementary school,[12] and that the Commissioner's husband (whom she identified by name) had "ties to the Navy" and "personally knows" Samuel. Eleanor asserted the Commissioner was thus disqualified for cause.

On September 19, 2023, the Commissioner construed Eleanor's motion as a "verified Statement of Disqualification" and filed a five-page verified answer denying every allegation of impropriety made by Eleanor. The

---

[12] Contrary to Eleanor's claim, the Commissioner *did* disclose to the parties and their attorneys that her children attended the same elementary school as the parties' children "a long time ago" and that she has no contact with the school but "[i]t's possible that there is staff there that may know [her]." In response to the court's disclosure on the first day of the evidentiary hearing, both parties' attorneys thanked the court and said nothing further.

19

Commissioner affirmed she has been and will continue to be impartial to all parties and counsel. The Commissioner then ordered Eleanor's statement of disqualification stricken.

On September 25, 2023, Eleanor filed another motion to withdraw her stipulation to the Commissioner. She continued to make the same unsupported allegations of serious judicial misconduct but added that the Commissioner lied or committed perjury in her verified answer to the first statement of disqualification. Eleanor also attached screenshots from the Commissioner's purported Facebook account with what appears to be a photograph of the Commissioner's daughter. On September 26, the Commissioner construed Eleanor's second motion as another statement of disqualification and ordered it stricken.

In this same time, Eleanor filed numerous lawsuits in federal court seeking to void the DVRO. Among other named defendants, she sued the Commissioner, the presiding judge of the superior court, and five other superior court judges. In dismissing the lawsuits, the district court found "it appears [Eleanor] may be attempting to obstruct the proceedings in the family law case and harass or be a nuisance to the [d]efendants" because "she is displeased with the decisions in her family law case."

In one complaint, Eleanor referenced a "map showing [the Commissioner's] home in relation to [Samuel's] home." This prompted counsel for the Commissioner to send Eleanor a letter "demanding, pursuant to California Government Code section 7928.215, that she not publicly post or publicly display the home address or telephone numbers" of the Commissioner or any other judicial officer, and that she redact the Commissioner's home address from any unsealed document she intended to file in federal court. Undeterred, Eleanor filed a second lawsuit that included

20

the address and a map of the Commissioner's home and included the home address on a proof of service of the summons. Additionally, Eleanor "repeatedly and unnecessarily insisted on serving [the Commissioner] at her home even after being informed that [counsel] represented [the Commissioner] and should be the recipient of any future pleadings, filings or correspondence." Fearing Eleanor's actions may increase the inherent safety risk posed to judicial officers, the Commissioner obtained a court order to seal Eleanor's filings.

On October 5, 2023—the same day Eleanor had Chris (her husband) serve the Commissioner at her home with a summons and complaint—the Commissioner recused herself from hearing the matter any further. In a minute order, the Commissioner stated, "Although [the Commissioner] believes that she could be fair and impartial as to the resolution of all pending issues before the court, the [C]ommissioner believes" that "[t]his recusal would further the interests of justice." (Code Civ. Proc., § 170.1, subd. (a)(6)(A)(i).)

In her opening brief on appeal, Eleanor asserts the Commissioner's "disqualification was based on the appearance of impropriety derived from the personal connections and ex-parte communications between the Commissioner and [Samuel]." She argues "[t]here is no question that a conflict existed here, as the Commissioner recused herself" and thus the "Commissioner's orders are void from the point that her conflict existed. The recusal order makes it clear that the conflict existed prior to [the] Commissioner . . . presiding over the restraining order hearing." This is a

spurious argument, and it rests on an egregious mischaracterization of the record.[13]

The Commissioner denied every allegation of impropriety; her voluntary recusal was not a concession to disqualification on the basis of any alleged impropriety. (See Code Civ. Proc., § 170.3, subd. (c)(2) ["Without conceding his or her disqualification, a judge whose impartiality has been challenged by the filing of a written statement may request any other judge agreed upon by the parties to sit and act in his or her place."]; *Vallejo v. Superior Court* (2021) 73 Cal.App.5th 132, 150).

And contrary to Eleanor's contention, the Commissioner's recusal did not render her disqualified at or before the time she issued the DVRO. Code of Civil Procedure section 170.3, subdivision (b)(4) provides: "If grounds for disqualification are first learned of or arise after the judge has made one or more rulings in a proceeding, but before the judge has completed judicial

---

[13] In addition to the mischaracterization of the record, we address Eleanor's noncompliance with rules of appellate procedure. The Appellant's Appendix, Eleanor's choice of record on appeal, must contain any item "that is necessary for proper consideration of the issues," including "any item that the appellant should reasonably assume the respondent will rely on." (Cal. Rules of Court, rule 8.124(b)(1)(A).) Eleanor failed to include the family court's second order striking Eleanor's state of disqualification and the multiple filings that establish the relevant events preceding the Commissioner's voluntary recusal on October 5, 2023; these were instead provided by Samuel in his requests for judicial notice. Moreover, an appellant's factual summary must include "*all* the material evidence on the point and *not merely* [*her*] *own evidence*." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [cleaned up].) Eleanor has not complied with this rule either. She presents a one-sided factual summary and omits any mention of the Commissioner's verified answer denying Eleanor's allegations of impropriety. This one-sided factual summary continues with her mischaracterization of the family court's factual findings in issuing the DVRO, which we discuss later.

action in a proceeding, the judge shall, unless the disqualification be waived, disqualify himself or herself, *but in the absence of good cause the rulings he or she has made up to that time shall not be set aside* by the judge who replaces the disqualified judge." (Italics added.) "Case law is split on whether a disqualified judge's prior rulings are void or voidable." (*Conservatorship of Tedesco* (2023) 91 Cal.App.5th 285, 305–306 (*Tedesco*) [collecting cases].)

On this record, however, it makes no difference whether we follow cases that hold "orders issued prior to disqualification are voidable rather than void" (*Tedesco, supra,* 91 Cal.App.5th at p. 305; accord *Betz v. Pankow* (1993) 16 Cal.App.4th 931, 940; *Urias v. Harris Farms, Inc.* (1991) 234 Cal.App.3d 415, 424 (*Urias*)) or the cases that go the other way (*Hayward v. Superior Court* (2016) 2 Cal.App.5th 10, 17; *Christie v. City of El Centro* (2006) 135 Cal.App.4th 767, 780). Eleanor has made no attempt on appeal (nor in the trial court) to argue there is "good cause" to set aside the Commissioner's issuance of the DVRO, and we see none. And "[t]here are no facts in the record to show that the [Commissioner] was disqualified *as a matter of law* at the time [she issued the DVRO on June 21, 2023]. [S]he disqualified [herself] only afterward. Consequently, the [DVRO] is not void." (*Bates v. Rubio's Restaurants, Inc.* (2009) 179 Cal.App.4th 1125, 1134, italics added (*Bates*).)

The cases cited by Eleanor are distinguishable from the case before us because, in each, "the judge was disqualified at the time he made the order in question, because of factual situations in existence at the time the orders were made." (*Bates*, *supra*, 179 Cal.App.4th at p. 1133; see *Giometti v. Etienne* (1934) 219 Cal. 687, 688–689 [a California Supreme Court order granting review of a case was considered void because one of the justices who concurred in the order was discovered to be related to counsel for petitioners]; *Urias*, *supra*, 234 Cal.App.3d at pp. 426–427 [summary judgment was

23

voidable upon plaintiff's objection where it was rendered by a judge whose former law firm was discovered to have represented the defendant in various civil litigation matters].)

Eleanor's related argument that the family court erred in entering the Commissioner's proposed statement of decision as final because she was "at the time" disqualified fails too because we have already rejected the underlying premise. We also reject her challenge to the family court's entry of the final statement of decision on the grounds the Commissioner's recusal did not render her "unavailable" within the meaning of Code of Civil Procedure section 635.[14] She provides no authority for this contention, and we find the attempted analogy to Evidence Code sections 240 and 701 unavailing.

Moreover, Eleanor has not demonstrated prejudice from any alleged irregularity in entry of the final statement of decision. (See *Leiserson v. City of San Diego* (1986) 184 Cal.App.3d 41, 46–48 [applying harmless error analysis in rejecting plaintiff's claim that judgment had been improperly entered where trial judge became unavailable due to his death and was unable to complete hearing on plaintiff's objections and finalize statement of decision].) The final statement of decision was unchanged from the Commissioner's proposed statement of decision, which was signed by the Commissioner and hewed closely to the court's oral rulings on June 21, 2023.

---

[14] "In all cases where the decision of the court has been entered in its minutes, and when the judge who heard or tried the case is unavailable, the formal judgment or order conforming to the minutes may be signed by the presiding judge of the court or by a judge designated by the presiding judge." (Code Civ. Proc., § 635.)

B.    *The DVRO Does Not Implicate Any First Amendment Right of Free Speech*

Eleanor contends her Instagram posts involved her right to free speech and cannot be enjoined through a DVRO. This is another spurious argument. Here, as elsewhere, Eleanor disregards the facts as the court found them. She characterizes her posts as "opinions" wherein she is "shar[ing] her dissatisfaction with her ex-husband, family, and their marriage," and ignores that the family court found Eleanor's posts contained *false* accusations that Samuel committed rape and sexual assault and were made to a "very large audience with the intent" of harming Samuel and his reputation. False accusations of crime are libel per se and enjoy no First Amendment protection. (See *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1127 ["false accusations of crime are libel per se"].)

To the extent Eleanor argues the DVRO constituted a prior restraint of speech, we disagree. The DVRO prohibited Eleanor from acts that "[h]arass, attack, strike, threaten, assault (sexually or otherwise), hit, follow, stalk, molest, destroy personal property, keep under surveillance, impersonate (on the internet, electronically or otherwise), block movements, annoy by phone or other electronic means (including repeatedly contact), or disturb the peace" of Samuel. It also required Eleanor to stay 100 yards away from Samuel and to not have any contact with Samuel except for "brief and peaceful contact" with Samuel for the purpose of court-ordered visits with the children. Nowhere in the DVRO was Eleanor enjoined from speaking or posting on a particular topic, including through her social media platform. (Compare *Molinaro, supra,* 33 Cal.App.5th at p. 826 [concluding the part of the restraining order prohibiting husband from "posting anything about his divorce case on Facebook constitutes an overbroad, invalid restraint on his

25

freedom of speech"]; *In re Marriage of Candiotti* (1995) 34 Cal.App.4th 718, 720, 725 [order prohibiting mother from disclosing negative information about her former husband's new wife to anyone except certain specific professionals held to be prior restraint of speech because it "would prevent [the mother] from talking *privately* to her family, friends, coworkers, or perfect strangers about her dissatisfaction with her children's living situation"].)

Eleanor's remaining argument centers on her contention that her Instagram posts "were not directed at [Samuel]." She argues, "To be directed, the speech has to be intended to reach [the] subject of the speech. Where the speaker reasonably believed the subject would not or could not observe their speech activity and has taken reasonable precautions to prevent the subject from observing that speech, harassment cannot occur." The single case she cites—"*Curcio v. Pels* (2020) 47 Cal.App.5th 1, *18*" (italics added)—does *not* stand for this proposition. Indeed, we are unable to find the specific page she cites. Regardless, the family court *did* find that Eleanor directed the Instagram posts at Samuel, rejecting the same factual arguments she makes here on appeal that the posts "could not have been directed to [Samuel] or his parents because they were not sent directly to them and they had been blocked from her social media since 2022."

Eleanor makes no assertion that there is insufficient evidence to support the family court's findings of facts in issuing the DVRO. We would therefore affirm the DVRO even if we did entertain her appeal.[15]

___

15    Although we do not disagree with the substance of his arguments, we deny Samuel's motion requesting monetary sanctions in the sum of $250,000 against Eleanor and her appellate attorney, "for taking of a frivolous appeal, appealing solely to cause delay, unreasonably violating court rules or a court

## DISPOSITION

The appeal is dismissed.  Samuel is entitled to his costs on appeal.


DO, Acting P. J.

WE CONCUR:


KELETY, J.


CASTILLO, J.

---

order, and filing an appendix that contains inaccurate copies of documents," because it is missing the required declaration to support the amount requested.  (Cal. Rules of Court, rule 8.2726(b)(1).)